1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bronson Turnquist
PO Box 99556
Seattle, WA 98139-0556
Telephone: 206-588-6264
bronson.turnquist@gmail.com

_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED

MAY 06 2015   ST

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

15-CV-710 JCC

BRONSON TURNQUIST, on behalf of himself
and all others similarly situated,

                **Plaintiffs,**

        **v.**

NORDSTROM, INC
1617 6th Ave
Seattle, WA 98101
NYSE: JWN
Telephone 206-628-2111

        **Defendant**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: _____

**CLASS ACTION COMPLAINT:**

**1. UNFAIR COMPETITION, PRACTICES,
DECLARED UNLAWFUL (RCW § 19.86.020 / §
19.86.010 et seq)**

**2. UNFAIR PRACTICES - RETALIATION
AGAINST WHISTLEBLOWER (RCW §
49.60.210(1))**

**3. FALSE OR MISLEADING STATEMENTS IN
FILED DOCUMENTS (RCW § 21.20.350)**

**JURY TRIAL DEMANDED**

Plaintiff Bronson Turnquist ("Plaintiff Turnquist") individually and behalf of all others

similarly situated (or collectively "Plaintiffs"), file this class action against Defendant Nordstrom,

Inc. ("Nordstrom", "Nordstrom.com", "Nordstrom Direct", or "Defendant"). Plaintiffs allege the

following upon personal knowledge as to their actions and upon information and belief based

on the investigation of Plaintiff Turnquist as to all other facts alleged in the Complaint:

**1.0 JURISDICTION AND VENUE**

CLASS ACTION COMPLAINT: TURNQUIST, et al v. NORDSTROM Page **1** of **28**

SUMM ISSUED (REL # SEA 70827)

**1.1**  This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332. The matter in controversy exceeds $5,000,000 exclusive of interests and costs, and this matter is a class action in which certain class members are citizens of States other than the Defendant's state of citizenship.

**1.2**  Venue is proper in this Court because Defendant resides in this District, and a substantial part of the events alleged in this Complaint giving rise to Plaintiff's claims, most notably the alleged violation of Washington State Law pertaining to retaliation against the whistleblower: Plaintiff Turnquist.

**1.3**  Venue is proper in King County because Plaintiff resides in King County and Nordstrom resides and transacts business in King County.

**1.4**  The claims of Plaintiff and the Class members asserted in this class action complaint are brought solely under state law causes of action and are governed exclusively by Washington law. The claims of Plaintiffs and the Class members are individual claims and do not unite or enforce a single title or right to which Plaintiffs and the Class have a common and undivided interest.

## 2. THE PARTIES

**2.1**  Plaintiff Bronson Turnquist is a resident and lives in Seattle, King County, Washington

**2.2**  Plaintiff Turnquist, as a Class Representative, seeks to represents a class of persons (The "Phantom Shipped Class") as follows:

All individuals or entities who have experienced harm based on intentional and systemic practice of "Phantom Ship" (to be defined) conducted by the Defendant.

**2.3**      Plaintiff Turnquist can be considered the putative sole member of the "Whistleblower Class," who have experienced unlawful retaliation for his advocacy of an immediate discontinuation of Phantom Ship, and for immediate redress to the Phantom Shipped Class

**2.4**      Defendant Nordstrom, Inc. is a corporation organized under the laws of the State of Washington, and has its principle place of business in Seattle, King County, Washington

### 3. OVERVIEW OF ALLEGATIONS

**3.1**      This case alleges that the Defendant knowingly and willingly engaged in a systematic and systemic pattern of fraudulent behavior against certain customers purchasing merchandise from the Defendant using their website: Nordstrom.com.

**3.2**      Over a period of several months, and potentially years, the Defendant specifically created and then utilized a software script against Plaintiff orders received from the website which purposefully misrepresented the nature of the transaction in a fraudulent way. This caused harm to probably hundreds and potentially thousands of impacted customers.  For ease of reference, this process will be referred to as "Phantom Ship"

**3.3**      For Plaintiffs harmed by Phantom Ship, this was the following systematic and systemic progression of events:

1

2

**3.3.A**   Plaintiff places an order for merchandize over Nordstrom.com, and the order is confirmed in writing via email.

3

4

**3.3.B**   For certain orders that Nordstrom was unable to fulfill for the Plaintiff, the Defendant used the software script they had created to perform the following actions:

5

6

7

8

**3.3.B.1**         Inform the Plaintiff in writing via email that their desired merchandise had shipped without validating that a ship event had occurred

9

10

**3.3.B.2**         Charge the Plaintiff's method of payment (typically a credit or debit card) for the item which had not been verified as shipped

11

12

13

14

Because the Defendant specifically created, and then continued to  carry on with a business process that intentionally misled Plaintiffs into believing a purchased item was indeed shipped and would be delivered, the terminology of Phantom Ship is used to distinguish these transactions from the typical and lawful routine ship events.

15

16

17

18

19

**3.3.C**   On a Phantom Shipped order, the Defendant informed the customer in writing via email that the item they purchased from Nordstrom.com had shipped to them, and would be arriving soon.  However, carrier tracking number information was not provided.

20

21

22

23

24

**3.3.D**   On a Phantom Shipped order, the Defendant charged the Plaintiff's payment method for the sale, for an item that the Defendant had great confidence had not shipped out, and was not planning to ship out.

25

26

27

28

CLASS ACTION COMPLAINT: TURNQUIST, et al v. NORDSTROM Page **4** of **28**

3.3.E   At the conclusion of a Phantom Shipped order cycle, the Defendant had no proactive plan to rectify the fraudulent misrepresentation of sale, and simply kept the Plaintiff's money.

3.4   If a Plaintiff who was harmed by a Phantom Ship noticed the financial irregularity and contacted the Defendant's Customer Service Group, the Customer Service Group (Which included Plaintiff Turnquist) was required by the Defendant via documented procedures to dishonestly represent the Phantom Ship event to the customer as being one in which the item was lost in shipment.  The Customer Service Specialist was required to utilize a process known as "No Product Return - Lost Package" in the Defendant's Order Entry System and either replace the desired item or refund the Plaintiff's method of payment.

3.5   Plaintiff Turnquist (performing in the role of Customer Service Specialist) discovered these apparent unethical and illegal transactions, and reported the problem to his leadership.  His concerns were ignored, and when he continued to advocate for an ethical resolution to the matter, his leadership subjected him to retaliation.  This retaliation was characteristic of the "workplace bullying" that is common amongst those targeted by their leadership for whistleblowing, to include:

3.5.A   Defendant's Dismissal of his concerns as being above his pay grade or scope of work

3.5.B   Defendant's concerted effort to enlist support from members of leadership to "create a paper trail" on Plaintiff Turnquist to create a hostile work environment for him which would cause him to voluntarily leave the company.  Some examples of retaliation based coaching received by Plaintiff Turnquist from his leadership that should not be

considered valid by a reasonable person with Customer Service experience include, but are not limited to:

      **3.5.B.1**      His supervisor coached him for responding to an email with a clarifying question about whether a posted time for system maintenance was in Standard or Daylight savings time and

      **3.5.B.2**      His supervisor coached him because he asked a peer for their methodology in adhering to a given policy pertaining to sale price adjustment on an item that was later specifically called out as not eligible for price adjustment (in large part due to his inquiries).

      **3.5.B.3**      His supervisor coached him via email after he expressed ethical concerns about classifying undelivered packages to customers by the Defendant's chosen carrier as being "Stolen," when there was insufficient evidence to make such a polemic claim.  In this email string, Plaintiff Turnquist's supervisor instructed him in a way that a reasonable person with Customer Service experience could only interpret as being a threat to his continued employment if he failed to classify undelivered packages as being "Stolen".

      **3.5.C**   Defendant created a pattern of extremely "Ticky-Tack" or otherwise hyper critical coachings of Plaintiff Turnquist's job performance.

      **3.6**      When Plaintiff Turnquist continued to insist on an explanation or other form of resolution of the problem of Phantom Ship, his leadership's retaliation against him culminated in termination for the stated reason of failing to follow procedure and/or poor performance.  It is important to reinforce here that one of the procedures that Plaintiff

Turnquist had ethical concerns with was the procedure that he was required to follow pertaining to the representation of Phantom Shipped orders to the customer as if they were "Lost in Shipment."

    **3.7**          For those Phantom Shipped orders discovered by the Plaintiffs, and corrected by the Defendant's Customer Service Organization, the net result was to falsify publically reported revenue accounting numbers, and delay return/refund accounting numbers.

## 4. GENERAL ALLEGATIONS

    **4.1**          A routine (Non-Phantom Shipped) order placed and fulfilled using the online Nordstrom.com website will typically processes in this systematic fashion:

    **4.1.A**    Customer places an order on the website, and the order is accepted into the Customer Service Order entry system

    **4.1.B**    Once order validation checks are complete, the order is sent to the Fulfillment System for "Pick/Pack" operations in preparation for ship. (The item desired by the customer is picked from the appropriate inventory bin, and packed into the totes prior to hand off to the shipping dock). The fulfillment operation will happen in hundreds of locations, to include the physical Brick and Mortar department stores that sell the same product as the website.

    **4.1.C**    Logistics at the shipping dock packages the items in boxing and packaging material and prints a shipping label (with a unique tracking number) for the appropriate contracted carrier (e.g., UPS) for the order. After a final inspection to make sure everything is meeting Quality Control (The Defendant is shipping what they are supposed to ship), the logistics teams transacts a ship event. By industry standard procedure, this visual

inspection is what verifies that the company can now charge the customer for the item as it

leaves the physical control of the company.  The act of providing the shipment tracking number

to the customer is not crucial to the confirmation of ship, but has become a best practice in the

industry.

    **4.1.D**  The ship transaction performed by the shipping dock at a given

fulfillment location will occur at some point during the physical operations of the given location.

Most shipping docks will not stay open any later than midnight except during the holiday

season.

  **4.2**    Routine online Nordstrom.com order "Sales Order Cycles" will therefore

culminate in an email to the customer which is auto-generated by the company order

management system, during the hours of store operation, and include a carrier tracking

number.  The correspondence note in the Order Entry System which verifies the ship will be

entered by an Enterprise Resource Processing (ERP) job under the title of "om.shipping.event"

or something of similar terminology.

  **4.3**    Some online Nordstrom.com orders are accepted on the website, but

upon receipt by the fulfilling location cannot be shipped out.  A common reason for this could

be that the desired item is out of stock, or that the remaining items in stock are in a damaged

or defective condition such that they cannot be sold.  Items that cannot be fulfilled in this

matter are often termed "Unshipped."  When this happens, a company will typically send the

item request to a different fulfillment location, or notify the customer that their order has been

cancelled for reason of it being out of stock, and reassure them that their credit card has not

been charged.  The use of a term like Unshipped is helpful because it is the one thing that a

company can be reasonably confident about for that line item on the order.  Wherever that line item might be in its order processing, no one has been able to verify that it actually has shipped.

**4.4**          For Phantom Shipped orders, the Defendant created a software script which processed older Unshipped line items as if they were shipped.  To put another way, this script converted every Unshipped line item that met a certain age criteria into Shipped status.  This Phantom Ship resulted in a written email to the customer confirming the shipment of their order, and charged the customer's credit card, without the crucial step of validating that the shipment occurred.  A Phantom Ship order, therefore, will "Ship" much later than expected.  It will have null carrier tracking information.  It will occur between 12a (Midnight) and 3a Pacific time, when no shipping docks are operating but the script job is run to minimize processing demand on the Order Entry system.  Finally, it won't be transacted using the standard ERP processing system.  Instead, the software developer's unique ID (For the Defendant, this was known as the "Local Access Network ID" or LANID) is recorded as the processor of the event.  A LANID is 4 characters in length and is unique to every employee and contractor of the Defendant.  As an example, Plaintiff Turnquist's LANID is q4zn.

**4.5**          Nordstrom has long endeavored to represent itself as a champion of ethical and charitable standards.  After Plaintiff Turnquist (operating in an entry level Customer Service Specialist role) continued to press for action about the perceived problem of Phantom Ship; he finally had to escalate to the top of the organization, and notified the Director of Customer Service for Nordstrom.com.  The initial response via email from the Director of Customer Service included the statement to him of: "Thanks for the additional examples and

1   very smart recommendations, Bronson, you're right on." Within 2 weeks Plaintiff Turnquist

2   was terminated and walked out of the building. The praise from a senior member of leadership

3

4   directly contradicts the declared reasoning by Plaintiff Turnquist's direct leadership at the time

5   of termination.

6                              **5. CLASS ACTION ALLEGATIONS**

7       **5.1**           The Defendant expresses in multiple areas on the website, as well as

8

9   during training of their Customer Service Specialist that no items are to be charged until it has

10  left the Defendant's 4 walls. Further the Defendant represents that customers will be notified

11
    when they have confirmed that their customer's order items have shipped. Here are some
12
13  areas on the website that also reflect this commitment to their customers:

14      **5.1.A**          From: http://shop.nordstrom.com/c/sales-tax?

15      **STATE AND LOCAL SALES TAXES**

16
        Taxes that appear in your online order confirmation are estimated. Because orders may
17
18  be fulfilled from multiple locations across the U.S., the actual taxes charged to your credit card

19  will be calculated based on the applicable state and local sales taxes when your order is

20
    shipped.
21
22      **5.1.B**          From: http://shop.nordstrom.com/c/terms-conditions?

23      **Merchandise Availability**

24
        Merchandise availability on our website is not guaranteed as it may be low in stock. If
25
26  merchandise is not available by the time your order processes, we will notify you of this via

27  email. You can always verify availability by calling Customer Service at 1.888.282.6060 or by

28

joining us in Live Help via the Customer Service link in the upper right-hand corner of our

homepage. You will receive a shipping confirmation email once your items have shipped.

**5.1.C**        From: http://shop.nordstrom.com/c/ordering?

**What should I expect after I've completed my order?**

We will email you as items in your order ship, and as we obtain updates on the status of

your order.

**5.1.D**        From: http://shop.nordstrom.com/c/frequently-asked-questions?

**Why is my item on backorder?**

Items that are not available to ship when an order is placed are on backorder and will

ship at a later date. Please note that while your credit card will be authorized on the date your

order is placed, you will not be charged until the item ships. We will provide you with an

approximate ship date for your item(s) at the time you make your selection. Please be aware

that backorder dates are approximate and subject to change. We will inform you by email if this

date changes.

**5.2**            The full extent of condition will be revealed during pre-trial discovery, but

this is the pattern of customer orders which presented a compelling case to Plantiff Turnquist

that he needed to progress his requests for ethical redress of the Phantom Ship problem past

his Leads, Supervisor, Operations Manager, and finally to the Director of Customer Service.  To

interpret this table, consider that each Order Number contains a line item which fit the pattern

of Phantom Ship; the LAN ID shown corresponded to a ship transaction attributed to a Software

Development Engineer instead of the standard Order Entry System processing event; and the

Store Number indicates the pervasive pattern of the practice across multiple stores in several

US states.

| Order # | Shipped by LAN ID | Developer name | Store # |
|---|---|---|---|
| 778548236 | x1wd | Chandrika.D@nordstrom.com | 425 |
| 777588334 | x2u6 | Tejaswini.Kommineni@nordstrom.com | 223 |
| 778424499 | x2u6 | Tejaswini.Kommineni@nordstrom.com | 223 |
| 774243117 | x2u6 | Tejaswini.Kommineni@nordstrom.com | 223 |
| 773110823 | x24n | Rakesh.Jalam@nordstrom.com | 730 |
| 781925072 | x2u6 | Tejaswini.Kommineni@nordstrom.com | 751 |
| 782236595 | x2sy | Kumari.Neha@nordstrom.com | 730 |
| 782168183 | x1wd | Chandrika.D@nordstrom.com | 765 |
| 782507124 | x24n | Rakesh.Jalam@nordstrom.com | 730 |
| 782817398 | x2u6 | Tejaswini.Kommineni@nordstrom.com | 524 |
| 781950532 | x1wd | Chandrika.D@nordstrom.com | 421 |
| 138352917 | x1wd | Chandrika.D@nordstrom.com | 751 |
| 783725642 | x2sy | Kumari.Neha@nordstrom.com | 220 |

For each of these alleged Phantom Shipped orders Plaintiff Turnquist or the processing

Customer Service Specialist was required in written procedures to resolve using the "No

Product Return - Lost" process while the common consensus on the call floor was that  no item

was ever actually shipped.

5.3        A typical shipment confirmation email annotation in the Customer

Service Order Entry system is represented by an auto-generated email that is kicked off by an

agent at a shipping dock that is processing the ship event after visually confirming with the

packing slip that the items the customer has purchased had been boxed and shipped.  The

"Order Correspondence Note" in the CS Order Entry System will have an indication of a routine

shipment by a system id, for example: om.shipped.agent.  For the Phantom Shipped orders, a

Software Development Engineer LANID appears in the "Entered by" field like so:

Order Correspondence Note entered by x2u6 on 04/08/2015 02:34:24.
Ship Confirmation - 400  Standard Shipping  Item(s): 825528

*Time is Central Time

**5.4**        A typical shipping event will occur during the hours the shipping dock at a given fulfillment center is in operation, and rarely, if ever will occur after Midnight for a Brick and Mortar Store Shipment.  The script driven Phantom Ships were usually logged between 12a (Midnight) and 3a Pacific, when it would be extremely rare for a person to have actually visually inspected and processed a shipment (except for during holiday periods).

**5.5**        The time period between when Plantiff Turnquist first started reporting the evident problem of Phantom Ship will likely begin on or about January 2015, but will need to be verified with pre-trial discovery. Plantiff Turnquist was terminated as retaliation for his whistleblowing on or about 22 April 2015

## 6. CLASS ACTION ALLEGATIONS

**6.1**        This action may be properly be maintained as a class action pursuant to Federal Rules of Civil Procedure Part 23

**6.2**        Plaintiffs bring this action as a class action on behalf of themselves and the following classes:

**6.1.A**    "The Phantom Shipped" class: Any person who placed an order on Nordstrom.com and was charged for an item they never received, but received an email from the Defendant confirming shipment (with no tracking number information).  The list of potential additional plaintiffs would likely be found by emailing every customer who received a ship notification from the Defendant with a correspondence note entered by a Software

CLASS ACTION COMPLAINT: TURNQUIST, et al v. NORDSTROM Page **13** of **28**

Developer LANID, but with null Tracking information.  Some of these plaintiffs may have not noticed that they never received the item and are still owed the item or a refund for the unfulfilled item.

        **6.1.B**   "The Whistleblower" class: Plantiff Turnquist, who was terminated in retaliation for acting in the role of whistleblower for the Phantom Ship issue.

    **6.2**        Excluded from the Classes are the Defendant, and all officers, directors, employees, or agents of the Defendant.

    **6.3**        The members of the Classes are so numerous that joinder of all members would be impracticable. Plaintiffs do not know the exact size or identities of the proposed Classes, since such information is in the exclusive control of Defendant. Plaintiffs, however, believe that the Classes encompass at least hundreds, and potentially thousands of individuals.

    **6.4**        There are common questions of law or fact, among others, including

        **6.4.A**   The nature, scope and operations of the wrongful practices of the Defendant;

        **6.4.B**   Whether Defendant's written correspondence with the plaintiffs were untrue, misleading, or reasonably likely to deceive;

        **6.4.C**   Whether Defendant's posted website information pertaining to confirmation of shipping events and associated charge events with the plaintiffs were untrue, misleading, or reasonably likely to deceive

        **6.4.D**   Whether the Defendant knew that its representations and/or omissions were false or misleading, but continued to make them.

**6.4.E**   Whether Defendant retaliated against Whistleblower Plaintiff Turnquist for pushing for ethical resolution of the Phantom Ship issue by taking unreasonable actions against him.  Further, whether these retaliatory actions against Plaintiff Turnquist culminated in a termination of employment.

**6.4.F**   Whether the Defendant's conduct violated Revised Code of Washington: UNFAIR COMPETITION, PRACTICES, DECLARED UNLAWFUL  (RCW § 19.86.020)

**6.4.G**   Whether the Defendant's conduct violated Revised Code of Washington: UNFAIR PRACTICES - RETALIATION AGAINST WHISTLEBLOWER (RCW § 49.60.210(1))

**6.4.H**   Whether the Defendant's conduct violated Revised Code of Washington: FALSE OR MISLEADING STATEMENTS IN FILED DOCUMENTS (RCW § 21.20.350)

**6.4.I**   Whether, as a result of the Defendant's misconduct as set forth in this Complaint, Plaintiffs and the Classes are entitled to damages, restitution, equitable relief and other relief, and the amount and nature of such relief; and

**6.4.J**   Whether the Defendant has acted on grounds generally applicable to the Class, making injunctive relief appropriate.

**6.5**          Plaintiff's claims are typical of the members of the Classes because Plaintiffs and all members of the Classes were injured by the same wrongful practices of the Defendant as described in this Complaint. Plaintiff's claims arise from the same practices and course of conduct that gives rise to the claims of the Classes members, and are based on the same legal theories. Plaintiffs have no interests that are contrary to or in conflict with those of the Classes he seeks to represent.

CLASS ACTION COMPLAINT: TURNQUIST, et al v. NORDSTROM Page **15** of **28**

1    **6.6**        Plaintiffs will fairly and adequately represent the interests of the

2

3    members of the Classes. Plaintiff's interests are the same as, and not in conflict with, the other

4    members of the Classes.

5    **6.7**        Questions of law or fact common to the members of the Classes

6    predominate and a class action is superior to other available methods for the fair and efficient

7

8    adjudication of this lawsuit, because individual litigation of the claims of all members of the

9    Classes is economically unfeasible and procedurally impracticable. While the aggregate

10   damages sustained by The Phantom Shipped members are likely to be in the millions of dollars,

11   the individual damages incurred by each of this particular Class member resulting from the

12

13   Defendant's wrongful conduct are, as a general matter, too small to warrant the expense of

14   individual suits. The likelihood of individual members of the Classes prosecuting separate claims

15   is remote and, even if every Class member could afford individual litigation, the court system

16

17   would be unduly burdened by individual litigation of such cases. Individualized litigation would

18   also present the potential for varying, inconsistent, or contradictory judgments and would

19   magnify the delay and expense to all parties and to the court system resulting from multiple

20

21   trials of the same factual issues. Plaintiffs know of no difficulty to be encountered in the

22   management of this action that would preclude its maintenance as a class action and

23   certification of the Classes is proper.

24   **6.8**        Questions of law or fact common to the Whistleblower class (Plaintiff

25

26   Turnquist) are likely predicated on the successful litigation by the Phantom Shipped class.  To

27   put another way, if a trial by jury returns a judgment in favor of the Phantom Shipped class, the

28   extension of compensation to Plaintiff Turnquist for damages, restitution, equitable relief and

1  other relief could reasonably follow.  Plaintiff Turnquist did not experience a Phantom Ship

2  event on one of his personally placed orders.  Rather, he witnessed the wrongdoing and was

3

4  required by written procedure to participate in the deception.  He experienced whistleblower

5  retaliation from his leadership for his continued urgings that the practice be ended and amends

6  made to the Phantom Shipped Class

7

8      **6.9**          Relief concerning Plaintiff's rights under the laws herein alleged and with

9  respect to the Classes would be proper on the additional ground that Defendant has acted or

10  refused to act on grounds generally applicable to the Classes, thereby making appropriate final

11  injunctive relief or corresponding declaratory relief with regard to members of each Class as a

12  whole.

13

14

15                      **7. FIRST CLAIM FOR RELIEF**

16      **FOR VIOLATIONS OF UNFAIR COMPETITION, PRACTICES, DECLARED UNLAWFUL  (RCW**

17

18                      **§ 19.86.020 / § 19.86.010 et seq.)**

19      **7.1**          Plaintiff repeats and realleges each and every allegation set forth in the

20  paragraphs above as if fully set forth herein.

21

22      **7.2**          Defendant is a "person" within the meaning of the Washington Consumer

23  Protection Act, RCW § 19.86.010(1), and conducts "trade" and "commerce" within the meaning

24  of the Washington Consumer Protection Act, RCW § 19.86.010(2).

25

26      **7.3**          Plaintiff and the other Class Members are "persons" within the meaning

27  of the Washington Consumer Protection Act, RCW § 19.86.010(1).

28

**7.4**        Defendant's actions are unfair and/or deceptive within the meaning of the Washington Consumer Protection Act, RCW § 19.86.010 et seq. Defendant engaged in an unfair or deceptive act or practice by:

**7.4.A**  Intentionally, systematically, and systemically charging the Plaintiffs for merchandise the Defendant had no plans to ship and deliver to them.

**7.4.B**  Intentionally, systematically, and systemically informing the Plaintiffs in writing that merchandise the Defendant had no plans to ship and deliver had actually shipped out (They received a ship confirmation email).   In addition to the falsification of commercial communication, another harm caused by this practice was to prevent the Plaintiffs that discovered the deception from purchasing an alternate item as a gift for a time sensitive specific occasion for several days.

**7.4.C**  Requiring via written procedures that their Customer Service Organization deceive the customers who were harmed by Phantom Ship that their purchased merchandise was actually "Lost in Shipment" via use of the No Product Return - Lost Package procedure.

**7.5**        Defendant's unfair or deceptive acts or practices have occurred in its trade or business, and were and are capable of deceiving a substantial portion of the public. The Defendant's general course of conduct has an impact on the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

**7.6**        Defendant knew, or should have known, that its misrepresentations, omissions, failure to disclosure and/or partial disclosures omit material facts and are likely to deceive a reasonable consumer.

CLASS ACTION COMPLAINT: TURNQUIST, et al v. NORDSTROM Page **18** of **28**

**7.7**          Defendant continued to make such misrepresentations despite the fact it knew or should have known that its conduct was misleading and deceptive.

**7.8**          Plaintiff and the other Class Members are therefore entitled to an order enjoining the conduct complained of herein; actual damages, including a refund of any money still owed to Plaintiffs acquired through their deceptive practices; treble damages; costs of suit, including a reasonable attorneys' fee; and such further equitable relief as the Court may deem proper.

## 8.  SECOND CLAIM FOR RELIEF

### FOR VIOLATION OF UNFAIR PRACTICES - RETALIATION AGAINST WHISTLEBLOWER

### (RCW § 49.60.210(1))

**8.1**          Plaintiff Turnquist repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

**8.2**          Washington State has employment "At Will." This means that the Defendant could have terminated Plaintiff Turnquist's employment at any time for any legal reason without providing that reason to him. Plaintiff Turnquist is confident that full pre-trial discovery will reveal the pattern of retaliation characteristic of that directed to whistleblowers in similar situations. Instead of a termination of employment with no reason given, Plaintiff Turnquist's Supervisor and Operations Manager terminated Plaintiff Turnquist for reasons of Performance and/or failing to follow Procedure. The pattern of whistleblower retaliation against Plaintiff Turnquist, as well as the timing of his termination so soon after providing the Defendant a great service in notifying them of their wrongdoing will be found at trial to be

1  harmful to the legal and ethical obligations of the Defendant to his employees and the

2  Plaintiffs.

3

4       **8.3**         Plaintiff Turnquist, after coming to the realization that the pattern of

5  whistleblower retaliation against him likely would result in his termination rather than redress

6  of the Phantom Ship malfeasance, saved an email that he specifically marked for record, which

7  the court could use to define the scope of pre-trial discovery in the Defendant's email server,

8  HR Database, documented procedures and policies, training material, and any other content

9

10  relevant to the complaint.  This email string is provided here (Please be advised that the most

11  recent emails are at the top of the string):

12

13  -------- Forwarded Message --------

14  Subject:       FW: {Escalate Systemic Issues} Phantom Ship FLS Hinkeyness

15  Date:          Fri, 17 Apr 2015 01:04:38 +0000

16

17  From:         Turnquist, Bronson <Bronson.N.Turnquist@nordstrom.com>

18  To:           'bronson.turnquist@gmail.com' <bronson.turnquist@gmail.com>

19  Potentially thousands of impacted customers over multiple years?

20

21  _____

22  From: Seede, Adam

23  Sent: Tuesday, April 14, 2015 6:01 PM

24

25  To: Turnquist, Bronson; N.Direct Special Services; Davidson, Doug

26  Subject: RE: {Escalate Systemic Issues} Phantom Ship FLS Hinkeyness

27  It's a systemic process that executes after the 5th day of an item continuing on a fulfilled

28  but not shipped report that the stores manage.  The team is aware of these scenarios and I've

        CLASS ACTION COMPLAINT: TURNQUIST, et al v. NORDSTROM Page **20** of **28**

1  shared yours and others examples in case more are needed. It's a store operational process

2  improvement that is needed to reconcile any packages that aren't confirmed shipped via

3
4  UPS/USPS with a tracking number.

5        ---------------------------------------------

6        From: Turnquist, Bronson

7
8        Sent: Tuesday, April 14, 2015 5:45 PM

9        To: Seede, Adam; N.Direct Special Services; Davidson, Doug

10       Subject: RE: {Escalate Systemic Issues} Phantom Ship FLS Hinkeyness

11
12       Further food for thought on this one. These Forced Shipment (Phantom) events seem to

13  all occur between the times of 2a to 4a Central Time. No shipping docks are likely operating

14  during these hours, and this consistent timing would go further to indicate that this is a

15  chronological (cron) or otherwise batch processing script that kicks off at about the same time

16  of the middle of the night each day.

17

18       Order Correspondence Note entered by x2u6 on 04/08/2015 02:34:24.
         Ship Confirmation - 400  Standard Shipping  Item(s): 825528

19
20       Bronson

21       ---------------------------------------------

22       From: Seede, Adam

23       Sent: Friday, April 10, 2015 10:22 PM

24
25       To: Turnquist, Bronson; N.Direct Special Services

26       Cc: Davidson, Doug

27
28       Subject: RE: {Escalate Systemic Issues} Phantom Ship FLS Hinkeyness

        CLASS ACTION COMPLAINT: TURNQUIST, et al v. NORDSTROM Page **21** of **28**

To level set on this, they are referred to as "forced shipments" by the stores and we've alerted the business of the issues this causes.  Before a store manually force ships an item to clear their system when their physical mailroom is clean yet orders are showing unshipped, they should partner with UPS to ensure confirmation that an item of the right weight/dimensions was received and in route to the customer's shipping address.  Then we can feel confident to force ship and figure out why the tracking number was missing.  If it's not a system glitch, then the item just never made it to the mailroom to begin with, had a quality issue and was pulled, etc., and we can then find the item to ship to the customer or cancel the order and contact the customer…either way, never charging until an item is confirmed shipped.

I will be following up on the status of the resolve.  Thanks for the additional examples and very smart recommendations, Bronson, you're right on.

Adam

_____

From: Turnquist, Bronson

Sent: Friday, April 10, 2015 1:38 PM

To: N.Direct Special Services

Cc: Davidson, Doug; Seede, Adam

Subject: {Escalate Systemic Issues} Phantom Ship FLS Hinkeyness

I had thought that we had our Phantom Ship problem under control, but I see that it has re-emerged as an issue.  At this point I am recommending {for record} that we ask one of our lawyers to mark this string P and C, and investigate the extent of any potential malfeasance caused by a pattern of operational behavior that may be interpreted as fraud by negligence.  In

an effort to mitigate potential impacts from a class action lawsuit from our customers, I

recommend that we investigate:

     1.    From the period 2012 to now,  how many customers have we charged for clothing

and other goods we knew we never shipped them?

     a.    This pattern would be characterized by a ship event, with no tracking info, and no

immediate refund to the payment method.

     2.    From this group of customers, how many have never received either a refund, or

the item they desired to purchase.

     3.    Should we find customers that are owed a refund, what is the plan to refund

them.

     4.    Should the problem of "Phantom Ship" (Sale No Ship) indeed be manifest, what is

our plan for correction of these findings?

     5.    Should the problem of "Phantom Ship" indeed be manifest, how was this deemed

an acceptable business practice?  What was our plan to reconcile these Phantom Ships without

customer impact?

     Here are the latest examples of what may very well be a pattern of fraud by negligence:

     If you query COM, you will find more.  You could query for shipped line items with no

tracking number, or, shipping emails generated not from our COM system, but from a SDE LAN

ID.

| Order # | Shipped by LAN ID | Developer name | Store # |
|---------|-------------------|----------------|---------|
| 778548236 | x1wd | Chandrika.D@nordstrom.com | 425 |
| 777588334 | x2u6 | Tejaswini.Kommineni@nordstrom.com | 223 |

| 778424499 | x2u6 | Tejaswini.Kommineni@nordstrom.com | 223 |
| 774243117 | x2u6 | Tejaswini.Kommineni@nordstrom.com | 223 |
| 773110823 | x24n | Rakesh.Jalam@nordstrom.com | 730 |
| 781925072 | x2u6 | Tejaswini.Kommineni@nordstrom.com | 751 |
| 782236595 | x2sy | Kumari.Neha@nordstrom.com | 730 |
| 782168183 | x1wd | Chandrika.D@nordstrom.com | 765 |
| 782507124 | x24n | Rakesh.Jalam@nordstrom.com | 730 |

Bronson

---------------------------------------------

From: Turnquist, Bronson

Sent: Friday, March 06, 2015 6:08 PM

To: N.Direct Special Services

Subject: {Escalate Systemic Issues} Phantom Ship FLS Hinkeyness

LCSS,

Fyi and for record.  I cannot ticket this stuff, but if it helps in our trending here is one of the top customer impacting problems I'm seeing.

Summary: Dozens of orders (my estimate) each week (much higher during the holiday period) are processed with a Shipping event, even though we seem confident nothing has shipped out.

Theory: It seems that some FLS are clearing their late released status orders by having a chron job process them as shipped.  This charges the customer for an item we never sent them, and have no plans to do so.  This also sends an email to the customer telling them that their order has shipped, but we know it has not.  We then keep their money unless the customer notices the sale but no ship event.

Extent of Condition:  Query all orders from FLS nodes that are in shipped status but have null tracking information.  Further, query all order notes that don't have a shipping event that comes from the OM system (instead they probably will show a COM Dev's LAN ID.  This should get the count of impacted customers, should my theory be correct

Examples:  These are ones that I have personally processed, but the EoC review query should provide many more.  As a metric of severity, we could look at the % rate of NPR Lost/Stolen on FLS Shipped - Null tracking?  If my theory is correct, very high.  Further, if we have items that are in shipped status and null tracking info, and the customer has not contacted us... are they due a refund?

| Order # | Shipped by LAN ID | Developer name | Store # |
|---------|-------------------|----------------|---------|
| 778548236 | x1wd | Chandrika.D@nordstrom.com | 425 |
| 777588334 | x2u6 | Tejaswini.Kommineni@nordstrom.com | 223 |
| 778424499 | x2u6 | Tejaswini.Kommineni@nordstrom.com | 223 |
| 774243117 | x2u6 | Tejaswini.Kommineni@nordstrom.com | 223 |

Bronson Turnquist  |  Customer Service Specialist  |  Nordstrom Direct 888-282-6060

-------------------------------------

**8.4**      The email string provided in the previous segment between Customer Service Specialist Plaintiff Turnquist and the Director of Customer Service for Nordstrom.com should serve as compelling evidence under any review by a person with a reasonable level of experience in a Customer Service organization that Plaintiff Turnquist was neither incompetent at his job, nor a person who simply declines to adhere to written procedures.

1    **10.7**          That the Court enter an order requiring Defendant to immediately cease

2    the wrongful conduct as set forth above; enjoining Defendant from continuing to conduct

3    business via the unlawful and unfair business acts and practices complained of herein; and

4    ordering Defendant to engage in a corrective notice campaign; and

5    **10.8**          Such other or further relief as may be appropriate under the

6    circumstances determined by the Court.

7

8                                    **11. JURY DEMAND**

9    **11.1**          Plaintiffs hereby demand a trial by jury.

10   DATED this _____ day of May, 2015

11

12

13

14

15

16

17   /s/ Bronson Turnquist

18   _____

19   Bronson Turnquist
     PO Box 99556
20   Seattle, WA 98139-0556
     Telephone: 206-588-6264
21   bronson.turnquist@gmail.com

22

23

24

25

26

27

28